(No. 4647—

EDWIN G. PETERSON, AN INCOMPETENT PERSON, BY MILDRED JOHNSON, HIS SISTER AND NEXT FRIEND, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 28, 1956.*

SUEKOFF, FROST AND SPIEGEL, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; EDWARD M. WHITE, Assistant Attorney General, for Respondent.

TOLSON, C. J.

On October 14, 1954, claimant filed his complaint in this Court seeking damages in the amount of $7,500.00 for injuries sustained while an inmate at the Chicago State Hospital.

The record consists of the following:

1. Complaint.
2. Departmental Report.
3. Transcipt of evidence.
4. Claimant's exhibits.
5. Stipulations.
6. Brief and argument of claimant.
7. Brief and argument of respondent.

The facts of the case are as follows:

On August 28, 1952, Edwin G. Peterson was committed to the Chicago State Hospital by the County Court of Cook County. On September 17, 1952, he was diagnosed as a chronic alcoholic, and subject to epileptic seizures. He was assigned to a ward, and given ward duties.

Some time during the night of November 11, 1953, he suffered a seizure, and grasped a hot steam pipe adjacent to his bed. He sustained first degree burns to his right hand, second degree burns to his left hand, and contracture of the wrist. On November 26, 1954, Dr. Leopold de Alvare, a staff surgeon, submitted a report indicating that the left hand was deformed about 10%, and the right hand 25%.

An examination of the transcript chart and photographs discloses that Mr. Peterson was assigned to Ward CW-13 on the first floor. The room is approximately 85 x 22, and housed 48 beds. A radiator was located at the north end of the room in front of three windows, and was protected by a wire mesh or grill. To the right of the radiator, a vertical steam pipe was in place, which was not covered or protected in any way. The bed, which was occupied by Mr. Peterson on the night of November 11, 1953, was situated along the side of the vertical steam pipe at a distance of about six inches.

From the transcript of the record, it is evident that Mr. Peterson was assigned the third bed from the north wall on the west side of the room (not the bed adjacent to the steam pipe). However, it further appears from the transcript that such a bed assignment was not enforced rigidly, as Mr. Peterson testified that Mr. Wilson, an attendant, permitted him to move to another bed, when he complained about being disturbed by other patients going to the wash room (transcript, page 18).

This practice of moving about was confirmed by Mrs. Anna Vaughan, an attendant, who stated on page 53 of the transcript:

"Q. Did he always occupy that bed when you were on duty?
A. No, he would move from one bed to another."

This Court, therefore, concludes that the fact that Mr. Peterson was not in his assigned bed, but was in the bed adjacent to the steam pipe, will not in itself act as a bar to recovery.

Claimant and respondent both cite the case of *John Tomasheski* vs. *State,* 17 C.C.R. 143, as authority in their behalf, and, because of the close similarity in fact, it will be discussed at length in this opinion.

John Tomasheski was a volunteer patient at Peoria State Hospital. He, too, was an epileptic, although that diagnosis does not appear in the record, and, in addition thereto, the Peoria Hospital does not ordinarily accept epileptic patients. In June of 1946, he went to the wash room, and while there suffered an epileptic attack. He seized an unprotected steam pipe located in a corner of the room, and suffered severe burns to his hands.

The Court denied a recovery on the grounds that the danger of the exposed steam pipe had never been brought to anyone's attention, and further that the epileptic seizure was an intervening act, which caused the injury, so that it could be said that the intervening act, not the existing condition, was the proximate cause of the injury.

The Court at page 147 of the report stated:

"If we should conclude that the uncovered pipes create a condition so that an ordinary prudent person could have reasonably anticipated the accident in question, we must necessarily resolve the issues in favor of claimant."

In the instant case, Mr. Peterson was a committed patient, not a volunteer; he was a known epileptic. The steam pipe was not located in a corner of the room, but was located within six inches of a bed in a ward, whether the bed was occupied by Mr. Peterson, or any other patient.

The most striking difference between the two cases can be found in the photograph of the ward received in evidence. It points out clearly that respondent took elaborate precautions to protect the patients from burns by placing a metal grill across the radiator, but did nothing to protect the steam pipe, which was equally hazardous.

In the case of *O'Brien* vs. *State,* 33 N.Y. Supp. 2-214, 11 A.L.R. 2-786, a patient in a New York Mental Hospital suffered a seizure, and grasped a "protective bar on a heated radiator". The Court found the state to be liable on the grounds that the ward was inadequately staffed, and further that "Safety devices should have been effectively taken to avoid occurrences like this".

In the New York case, some effort had been made to protect the patients, while in the instant case nothing was done.

In the New York case, some effort had been made to the patients entrusted to the Department of Public Welfare. The rule is set forth in 30 *C.J.* 467 No. 18.

"Degree of Care. The extent and character of the care that a hospital owes its patients depends on the circumstances of each particular case. A private hospital owes its patients the duty of protection, and must exercise such reasonable care toward a patient as his known condition may require. This care extends to safeguarding the patient from dangers due to mental incapacity, and to the use of any instrumentality producing pain. However, these rules are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen."

The Court recognizes that patients suffering from epilepsy are prone to fall when in a seizure, and there are an unlimited number of ways that they can injure themselves, which cannot be anticipated by respondent. Since this is the unfortunate history of the disease, nothing contained in this opinion should be construed as requiring the state to exercise more than ordinary care.

However, the Court believes that the placing of a bed in a ward within six inches of an unprotected steam pipe is of itself an act of negligence. The Court further finds that by placing a protective guard over the radiator, respondent recognized an apparent danger to others, but did not use ordinary care or judgment when it failed to recognize and protect the steam pipe connected to said radiator.

We, therefore, conclude that the uncovered steam pipe, adjacent to the bed, created a condition, so that an ordinary prudent person could have reasonably anticipated the accident in question, and, therefore, resolve the issues in favor of claimant.

An award is, therefore, made to claimant in the sum of $2,500.00.